*Supp. 6 Opinion
COLE, J.
The principal question presented by this appeal is whether a defendant who has been charged with, and convicted of, the commission of an infraction in violation of section 21453 of the Vehicle Code, was unconstitutionally deprived of the right to a jury trial. We hold that such a defendant is not entitled to a jury trial and affirm the judgment.
On March 22, 1974, defendant received a citation alleging that in violation of section 21453 of the Vehicle Code he failed to stop for a traffic signal which required him to do so. Thereafter, a complaint was issued charging the same offense. Although the record is not entirely clear, it appears that on April 9, 1974 defendant moved to dismiss on the ground that he was entitled to a jury trial. The motion was denied and he was tried by the court alone. Having been found guilty, the court sentenced him to pay a fine in the sum of $10 and to pay a penalty assessment in the amount of $5.50. This appeal followed.
In 1968 the Legislature enacted various statutes creating a class of offenses known as “infractions” (Stats. 1968, ch. 1192). Among other things section 16 of the Penal Code was amended to read: “Crimes and public offenses include: 1. Felonies; 2. Misdemeanors; and 3. Infractions.”
Section 19c was added to the same code to read: “An infraction is not punishable by imprisonment. A person charged with an infraction shall not be entitled to a trial by jury. A person charged with an infraction shall not be entitled to have the public defender or other counsel appointed at public expense to represent him unless he is arrested and not released on his written promise to appear, his own recognizance, or a deposit of bail.”
Penal Code section 19d was enacted as follows: “Except as otherwise provided by law, all provisions of law relating to misdemeanors shall apply to infractions, including but not limited to powers of peace officers, jurisdiction of courts, periods for commencing action and for bringing a case to trial and burden of proof.”
Section 1042.5 was also added to the Penal Code. Insofar as is directly relevant here it provides, “Trial of an infraction shall be by the court, . . .”
Defendant grounds his claim of entitlement to a jury on the seemingly absolute language of article I, section 7 of the California Constitution *Supp. 7 which provides that “The right of trial by jury shall be secured to all, and remain inviolate . . . ,”[1]
In implementation of the constitutional language, section 689 of the Penal Code provides, “No person can be convicted of a public offense unless by verdict of a jury, accepted and recorded by the court, by a finding of the court in a case where a jury has been waived, or by a plea of guilty.”[2]
Article 1 of chapter 1 of division 17 of the Vehicle Code (commencing with § 40000.1) deals with criminal violations of that code. Vehicle Code section 40000.1 reads as follows: “Except as otherwise provided in this article, it is unlawful and constitutes an infraction for any person to violate, or fail to comply with any provision of this code, or any local ordinance adopted pursuant to this code.” The balance of the article specifies certain offenses, not including the one here involved, as constituting misdemeanors or felonies. Therefore unless otherwise expressly provided, any Vehicle Code violation is an infraction.
Vehicle Code section 42001, subdivision (a) provides that with certain exceptions[3] persons convicted of infractions for violation of the code or ordinances adopted pursuant thereto, shall be punished by a fine not ex *Supp. 8 ceeding $50, for second convictions within one year by a fine not exceeding $100, and for third convictions by a fine not exceeding $250. No imprisonment or other incarceration is provided for.[4]
Concerning the right to jury trial in California, our Supreme Court has said (adopting an opinion written for the then District Court of Appeal): “The right to trial by jury guaranteed by the Constitution is the right as it existed at common law at the time the Constitution was adopted [citation omitted]. The common law at the time the Constitution was adopted includes not only the lex non scripta, but also the written statutes enacted by Parliament [citation omitted]. The common law respecting trial by jury as it existed in 1850 is the rule of decision in this state [citation omitted]. Any act of the Legislature attempting to abridge the constitu-: tional right is void [citation omitted]. It is the right to trial by juiy as it existed at common law which is preserved; and what that right is, is a purely historical question, a fact which is to be ascertained like any other social, political or legal fact. The right is the historical right enjoyed at the time it was guaranteed by the Constitution. It is necessary, therefore, to ascertain what was the rule of the English common law upon this subject in 1850.” People v. One 1941 Chevrolet Coupe (1951) 37 Cal.2d 283, 286-287 [231 P.2d 832]. See also Ex parte Wong You Ting (1895) 106 Cal. 296, 298-299 [39 P. 627]; People v. Kelly (1928) 203 Cal. 128, 133 [263 P. 226],
The fact the statute in question was enacted after the adoption of the Constitution in 1850 makes no difference. If there was a right to a trial by jury before the adoption of the Constitution so there is a right to such a trial in cases of the same class arising thereafter. (People v. One 1941 Chevrolet Coupe, supra, 37 Cal.2d at p. 300.)
However, it is well recognized that under the English common law and indeed under colonial law antedating the independence of the United States, many petty criminal offenses against statutes or municipal ordinances were not triable by jury at the time the Constitution was adopted. “As to them, the right of trial by jury has never existed; and, since they were triable without a jury when the Constitution was adopted, they are"now triable without a jury. . . .” (Ibid.) Ex parte Wong You Ting, supra, 106 Cal. 296 at page 300; In re Fife (1895) 110 Cal. 8, 9 [42 P. 299]. This is equally true insofar as federal constitutional guarantees of trial by jury are concerned. (See p. Supp. 10, infra.)
*Supp. 9 Examination of the historical fact to which we are directed discloses that a bewildering variety of offenses were subject to summary trial without a jury at the common law. An exhaustive collection of them is found in a classic article by Felix Frankfurter and Thomas G. Corcoran in 39 Harvard Law Review 917 (1926), Petty Federal Offenses and the Constitutional Guaranty of Trial by Jury, (hereafter “Frankfurter and Corcoran”). As there pointed out: “. . . Eliminating all penal enforcements in which the informer or the ‘party aggrieved’ shared the fine with the Crown, we find at least one hundred offenses for which the Crown prosecuted before a justice and without a jury. Violations of the laws relating to liquor, trade and manufacture, labor, smuggling, traffic on the highway, the Sabbath, ‘cheats,’ gambling, swearing, small thefts, assaults, offenses to property, servants and seamen, vagabondage and disorderly conduct were largely in the justices’ hands. . . .” (39 Harv.L.Rev. at p. 928.) (Italics added.)
These offenses included some where, as here, only a fine could be imposed. “Another branch of summary proceedings- is' that before justices of the peace, in order to inflict divers petty pecuniary mulcts . . . .” (4 Blackstone’s Commentaries 281 (p. 399 of the 1857 New Edition adapted by Kerr).)
A pre-revolutionary statute of the same class as the Vehicle Code violation involved here is the act of 13 George III, chapter 84 (30 Stat. 267 et seq.) (Pickering, 1773) which regulated in minute detail various aspects of highway traffic. For example, article XXI thereof (30 Stat. 276) made it unlawful for wagon and cart drivers to drive their vehicles with more than a prescribed number of horses or beasts of draught. No jury trial was allowed. In case of violation, a magistrate could assess a forfeiture or penalty ranging from 10 shillings to 5 pounds. Article XL of the same statute (30 Stat. 283-284) provided that for various driving offenses including negligent driving, leaving the road, and preventing the free passage of other vehicles, a driver was liable on conviction by a justice of the peace to pay a forfeiture or penalty ranging from 10 to 20 shillings, with one month’s confinement being possible in default of payment. See also the Act of 13 George III, chapter 78 (30 Stat. 183).
Various pre-revolutionary colonial enactments likewise provided for conviction by a court without a jury if a defendant violated ordinances or statutes relating to the use of the streets. They are collected along with numerous other petty offenses for which no jury trial was required in ap *Supp. 10 pendices to Frankfurter and Corcoran, supra, 39 Harvard Law Review, page 983 et seq.
Confining our inquiry then to the “purely historical question” posed by People v. One 1941 Chevrolet Coupe, supra, 37 Cal.2d at page 287, and applying the English common law as it existed in 1850, it is clear that offenses of the same class as those now classified as infractions by the Vehicle Code were triable by courts sitting without juries. Under this approach sections 19c and 1042.5 of the Penal Code fully measure up to the constitutional mark.
Federal constitutional provisions relating to jury trials[5] are applicable to the states through the 14th Amendment. Duncan v. Louisiana (1968) 391 U.S. 145 [20 L.Ed.2d 491, 88 S.Ct. 1444]. Duncan and other decisions of the Supreme Court preceding and following it, e.g., Callan v. Wilson (1888) 127 U.S. 540, 557 [32 L.Ed. 223, 227, 228, 8 S.Ct. 1301]; Natal v. Louisiana (1891) 139 U.S. 621 [35 L.Ed. 288, 11 S.Ct. 636]; Schick v. United States (1904) 195 U.S. 65 [49 L.Ed. 99, 24 S.Ct. 826]; District of Columbia v. Colts (1930) 282 U.S. 63 [75 L.Ed. 177, 51 S.Ct. 52]; District of Columbia v. Clawans (1937) 300 U.S. 617, 624 [81 L.Ed. 843, 846, 57 S.Ct. 660]; and Baldwin v. New York (1970) 399 U.S. 66 [26 L.Ed.2d 437, 90 S.Ct. 1886] all recognize that “petty” offenses do not fall within the constitutional requirement of jury trial. In determining whether or not an offense is “petty” the Supreme Court at least in cases not involving imprisonment for contempt,[6] has not looked solely to the nature of the penalty involved. Rather, it has inquired whether the offense was serious by nature and if so, a jury has been required even if the penalty for the particular offense is small. In Callan v. Wilson, supra, 127 U.S. 540, 557, the charge was .“conspiracy.” Although the penalty was $25 fine or 30 days, the offense was held “serious” with a jury trial required. In District of Columbia v. Colts, supra, 282 U.S. 63, a charge *Supp. 11 of driving a vehicle recklessly so as to endanger property or individuals, with a statutory penalty of $25 to $100 fine and imprisonment of 10 to 30 days was called “malum per se” and because of the potential consequences so serious as to shock the general moral sense; therefore a jury was required.
If the nature of the offense, however, is not serious, the court more readily looks to the potential penalty to classify the offense as serious or petty. (District of Columbia v. Clawans, supra, 300 U.S. 617, 624—engaging in business as a dealer in second hand property without a license; maximum statutory penalty $300 fine or 90 days—petty; Natal v. Louisiana, supra, 139 U.S. 621—keeping a public market in violation of municipal ordinance, $25 or 30 days if fine not paid—petty; Schick v. United States, supra, 195 U.S. 65—dealing in unlabeled oleomargarine, $50 penalty—petty; Baldwin v. New York, supra, 399 U.S. 66, misdemeanor of “jostling,” carrying a one-year penalty held not to be petty in view of the maximum potential sentence.)
Stating that “. . . the boundaries of the petty offense category have always been ill-defined if not ambulatory. . . .” 391 U.S. at page 160 [20 L.Ed.2d at page 502], the court in Duncan v. Louisiana, supra, referred to the need to examine objective criteria and to past and contemporary community standards. 20 L.Ed.2d at page 503. It held that a crime —there battery—punishable by two years imprisonment—was serious, and that a jury twice was required, basing the holding, however, on the length of the potential sentence. (See Annotation, 26 L.Ed.2d 916, Distinction Between “Petty” and “Serious” Offenses for Purposes of Federal Constitutional Right to Trial by Jury—Supreme Court Cases.) For further discussion of the various factors to be looked to in determining whether an offense is petty and hence need not be tried by a jury see Baker v. City of Fairbanks (Alaska 1970) 471 P.2d 386, 392-393.
Tested by any measure, the infraction of which defendant was here convicted must be classified as “petty.” It is within that class of cases triable by a court without a jury at English common law. The ordinary case of running a red light is not a case to which social or moral opprobrium attaches. While the conduct is antisocial, in a sense, no charge is made that defendant committed the more aggravated offenses of reckless driving (Veh. Code, § 23103) or of reckless driving proximately causing bodily injury (Veh. Code, § 23104) which are expressly declared by Vehicle Code section 40000.15 to be misdemeanors and not infractions. (Compare District of Columbia v. Colts, supra, 282 U.S. 63.) No possible consequences to *Supp. 12 the defendant in terms of loss of livelihood are called to our attention.[7] The offense is clearly one that is malum prohibitum only and not malum per se. A similar result was reached in State v. Shak (1970) 52 Hawaii 2 [466 P.2d 420], and in State v. Anonymous (1971) 6 Conn.Cir. 451 [275 A.2d 618].[8]
Defendant here suffered no deprivation of any constitutional right in being denied a trial by jury. Other contentions raised by him on this appeal are without merit.
The judgment is affirmed.
Katz, P. J., and Holmes, J., cocurred.

The brief of the People in this case is not helpful. Rather than discussing the issue, it simply characterizes defendant’s brief as “frivolous,” states that it has never been held that a jury trial is required for infractions and, citing a dictum in Mills v. Municipal Court (1973) 10 Cal.3d 288, 302, footnote 13 [110 Cal.Rptr. 329; 515 P.2d 273], remarks that there is a distinction between infractions and misdemeanors since “incarceration is not an applicable sanction.”

The language in section 689 obviously conflicts with that of Penal Code sections 19c and 1042.5. Section 689, however, was originally enacted in 1872 and last amended in 1951. In accordance with ordinary principles of statutory construction we must read all of the sections of the Penal Code together, give effect in case of conflict to the latest enacted sections, and construe the provisions of the sections according to the fair import of their terms with a view to effecting their objective and to promoting justice. (Pen. Code, § 4.) Therefore, we read sections 19c and 1042.5 as qualifying section 689, insofar as infractions are concerned, and we devote our attention to the constitutional infirmity alleged to exist in the concept that infractions need not be tried by juries.

One of the exceptions referred to is Vehicle Code section 42001.5. It states that a person convicted of an infraction for a violation of section 22700 of the Vehicle Code (abandoning a vehicle) shall be punished by a fine of not less than $50. Another exception arises from litter law violations. Section 42001.7 calls for mandatory fines ranging from a minimum, of $10 to a maximum of $500. The section also allows the court to require on a second or subsequent conviction as a condition of probation that the defendant pick up litter for a specified number of hours. The third exception relates to excess weight violations. Depending upon the weight involved, fines can range from $10 to $1000 (Veh. Code, § 42030). It should also be noted that under Vehicle Code section 42005 traffic violators may be ordered to attend a school.

Under section 42003, subdivision (a) of the Vehicle Code, a person convicted of an infraction may be given time to pay the fine either in a lump sum or in installments and on failure .to do so must appear in court for further proceedings. If such a defendant wilfully violates an order so to appear he may be punished for contempt. Such a contempt, of course, could entail imprisonment for five days.

Article III, section 2 of the United States Constitution states: “. . . The Trial of all Crimes, except in Cases of Impeachment shall be by jury . . . .” The Sixth Amendment provides, “In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed . . . .”

In a series of cases dealing with the contempt power, the last of which were decided as recently as June 26, 1974, the United States Supreme Court has held that a sentence of six months is the dividing line between “serious” and “petty” offenses, a sentence no longer than six months not requiring trial by jury. Codispoti v. Pennsylvania (1974) 418 U.S. 506, 511 [41 L.Ed.2d 912, 919, 94 S.Ct. 2687]; Taylor v. Hayes (1974) 418 U.S. 488, 496 [41 L.Ed.2d 897, 905, 94 S.Ct. 2697]; Frank v. United States (1969) 395 U.S. 147 [23 L.Ed.2d 162, 89 S.Ct. 1503]; Dyke v. Taylor Implement Co. (1968) 391 U.S. 216 [20 L.Ed.2d 538, 88 S.Ct. 1472]; Bloom v. Illinois (1968) 391 U.S. 194 [20 L.Ed.2d 522, 88 S.Ct. 1477]; Cheff v. Schnackenberg (1966) 384 U.S. 373 [16 L.Ed.2d 629, 86 S.Ct. 1523].

No claim is made that defendant’s driving record is such that this conviction endangers his driver’s license (Veh. Code, §§ 12809 and 12810) or even that such a license is necessary for defendant’s livelihood.

As to cases involving a charge of driving under the influence of intoxicating beverages, the courts have reached diverse results as to whether jury trials are required. See Annotation 16 A.L.R.3d 1377.